IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| S.F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant.[1] | Civil No. 21-15484 (RMB) <br><br><br> OPINION |

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security benefits. For the reasons set forth below, the Court shall affirm the decision of the Administrative Law Judge.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff alleged an onset date of disability of February 21, 2018, due to post-traumatic stress disorder and anxiety, among other impairments. [Docket No. 10 (referred to hereafter as "Plaintiff's Brief"), at 1 (citations omitted).] Plaintiff also

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. All references herein to Andrew Saul or the Commissioner, as briefed by the parties, shall be understood to refer to Kilolo Kijakazi for these purposes.

1

suffers from multiple sclerosis ("MS"), first diagnosed in 2011. [*Id.* at 3.]

Plaintiff protectively filed applications for DIB on June 12, 2019, and for SSI on November 20, 2019. [*Id.* at 1.] On December 12, 2019, after Plaintiff's claims had been denied both initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). [*Id.*] Such hearing was held before the Honorable Thomas Merrill on December 14, 2020, on which date Plaintiff was 38 years old. [*Id.*] Plaintiff has an associate degree and has served her country as a member of the military deployed in Afghanistan. [*Id.* at 3.]

On February 16, 2021, the ALJ issued an unfavorable decision, denying Plaintiff's applications for DIB and SSI. [Docket No. 7–2 (referred to hereafter as the "Administrative Record" or "AR"), at 12–29.] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but her appeal was denied on July 29, 2021. [*Id.* at 1–11.] On August 17, 2021, Plaintiff commenced the present action, requesting judicial review of the Commissioner's final decision and invoking the jurisdiction of this Court pursuant to 42 U.S.C. § 405(g). [Docket No. 1.]

II.   **THE ALJ'S DECISION**

The ALJ determined that Plaintiff was not disabled for purposes of social security benefits, finding her capable of making an adjustment to her past relevant work as a medical assistant and a security guard. [AR at 27.] At step one of the five-step, sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability of February 21, 2018. [*Id.* at

18.] Moving on to step two, the ALJ determined that Plaintiff suffers from one "severe" impairment, MS, which significantly limits her ability to perform basic work activities. [*Id.*] The ALJ also discussed several of Plaintiff's other impairments at step two, explaining that such impairments—because they caused no more than minimal limitations in her ability to perform basic work activities and/or have not lasted or are not expected to last at a "severe" level for a continuous period of 12-months or expected to result in death—were not "severe" for purposes of social security benefits at step two, including Plaintiff's neck and back pain, spinal degenerative disc disease, medial nerve dysfunction, uterine fibroids, depressive disorder, and posttraumatic stress disorder, among others. [*Id.* at 18–17.]

At step three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 21.] Turning to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." [*Id.* at 22.]

Next, the ALJ determined that Plaintiff could return to her past relevant work as a medical assistant and a security guard. [*Id.* at 27.] The ALJ also relied on the testimony of Vocational Expert, Dale Pasculli, that other relevant work also exists in significant numbers in the national economy that Plaintiff would be able to perform, specifically, all jobs in the light and sedentary occupational bases set forth in the

Dictionary of Occupational Titles. [*Id.* at 28–29.] Thus, the ALJ ultimately concluded at the final step of the five-step, sequential analysis that during the relevant period Plaintiff "has not been under a disability, as defined in the Social Security Act." [*Id.* at 29.]

### III.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on

> to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

IV.    **ANALYSIS**

On appeal, Plaintiff's supporting brief asserts many broad, sweeping challenges to the ALJ's decision and supporting rationale, including the following: (i) the ALJ failed to provide a proper assessment of Plaintiff's RFC; (ii) the ALJ failed to properly weigh Plaintiff's own statements and hearing testimony regarding her symptomology; (iii) the ALJ failed to consider all evidence of record, more specifically, the medical findings of Plaintiff's chiropractor and Plaintiff's treating neurologist; (iv) the appointment of Andrew Saul as the single Commissioner of the Social Security Administration removable only for cause is unconstitutional and violates the separation of powers doctrine; and (v) an award of summary judgment

6

regarding social security benefits should be entered by this Court in Plaintiff's favor based on the Administrative Record presently before it. [Plaintiff's Brief at 6–24.] The Court now considers each of Plaintiff's arguments in turn.

### A.   The ALJ's RFC Assessment Is Supported by Substantial Evidence

As an initial matter, Plaintiff's first argument appears to conflate the relevant analysis required by the ALJ at step two and step four of the five-step, sequential analysis. First, Plaintiff argues that the ALJ erred at step two by finding that several of her impairments were not "severe," including her mental impairments caused by depression and anxiety. [*Id.* at 9–10.] However, Plaintiff also concedes that any error by the ALJ at step two was harmless because the ALJ did, in fact, proceed with the remainder of the analysis after finding at least one of Plaintiff's impairments "severe" at step two. [*Id.* at 10.] The Court agrees. Thus, Plaintiff's challenge for purposes of this appeal concerns only the requirement that the ALJ consider *all* of Plaintiff's medically determinable impairments, both those that are "severe" and those that are determined to be not "severe" at step two, in formulating the RFC assessment of Plaintiff at step four. *See* S.S.R. 96-8p.

Regardless, the Court is satisfied that the ALJ did expressly consider Plaintiff's alleged mental impairments at both step two and step four of the sequential analysis, finding that Plaintiff had only mild limitations in two of four broad areas of functioning as measured by the "paragraph B" criteria such that no limitations were

necessary to incorporate in the ALJ's RFC assessment.[2] In her supporting brief, Plaintiff argues that the ALJ did not expressly mention Plaintiff's general anxiety disorder "so there is no basis upon which the Commissioner could defend that the impact of this impairment was considered by the ALJ." [Plaintiff's Brief at 10.] The Court disagrees. The ALJ discussed Plaintiff's alleged mental impairments at length, and just because he referred to Plaintiff's depression and anxiety more broadly as "mental impairments," and did not use the specific words "general anxiety disorder," does not mean that the ALJ failed to consider them. In fact, at step two, the ALJ found that the record was inconsistent with all of Plaintiff's alleged mental impairments, offering the below detailed rationale that is generally consistent with the evidence of record he cites:

> [T]he record generally shows benign findings upon mental status examinations without substantial treatment sought for her mental symptoms. For example, the claimant received short-lived behavioral health services in mid-2018 to early 2019 due to her inability to conceive a child. On rare occasions she appeared dysphoric or mildly depressed, but otherwise she presented with normal appearance, memory, attention span, concentration, speech, thought processes, insight, and judgment (Exhibits 2F/7, 27-29, 45, 49-50; 4F/41-43, 91; 6F/15; 19F/9). She did not seek more intensive treatment such as psychotropic medications, psychiatric hospitalization, or inpatient care. She also reported that she is able to engage in basic activities of daily living. For instance, in June 2018, the claimant reported that she went on a trip to Hawaii (Exhibit 4F/66). In October 2018, the claimant sought treatment, reporting depression related to the challenges getting pregnant. The provider "encouraged [the claimant] to consider how work or being productive can help distract from pregnancy and produce income to offset medical expenses."

---

2 The ALJ found that Plaintiff had no limitations in understanding, remembering, or applying information, or in adapting or managing herself. The ALJ found Plaintiff had mild limitations in interacting with others, as well as in maintaining concentration, persistence, or pace. [AR at 19.]

> [. . .]
>
> [T]he claimant demonstrated largely benign mental status findings with no more than infrequent deficits noted on such exams. Her mental condition was well controlled without substantial treatment, and she did not require psychotropic medications, psychiatric hospitalizations or in-patient care. Furthermore, she was able to perform basic activities of daily living and engage in recreational pursuits such as traveling.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

[AR at 19–20 (emphasis in original).] The Court agrees that such medical evidence generally supports the ALJ's conclusion that Plaintiff's mental impairments were not "severe" at step two.

Regardless, the ALJ was still required to consider whether Plaintiff's mental impairments warranted any limitations in her RFC assessment at step four. However, the Court finds that, once again, the ALJ did exactly that, providing the following rationale to explain the decision to exclude any such mental health limitations from the RFC assessment consistent with the evidence he cites:

> The DDS psychological consultants administratively found that the claimant has no more than mild limitations in the "paragraph B" criteria and that her mental impairments are non-severe (Exhibits 1A; 3A). The undersigned concludes that these prior administrative findings are persuasive. These findings are supported by largely benign mental status findings throughout the record. The claimant demonstrated well controlled mental functioning without substantial treatment, no need for psychotropic medications, no psychiatric hospitalizations or in-patient care, and the ability to perform basic activities of daily living and engage in recreational pursuits such as traveling (Exhibits 2F/7, 27-29, 45, 49-50; 4F/41-43, 66, 91; 6F/15; 19F/9).

[AR at 26.]

Indeed, Plaintiff is also able to point to some medical evidence of record that supports her position, and the Court agrees that such medical evidence shows that there was a time when Plaintiff was treated for depression and anxiety from mid-2018 through early 2019 due to her inability to conceive a child, and the ALJ discusses this. [AR at 333–34, 342–58.] But the relevant medical evidence of record tells a more accurate recitation of the facts than Plaintiff portrays, including that she underwent surgery, eventually became pregnant, and that her depression and anxiety generally improved over time, all of which the ALJ addresses. [*Id.*] Even more convincing is the fact that the treatment notes during the period when Plaintiff was treated by the VA for depression show that Plaintiff's mental impairments were not as severe as she now contends, including findings that she was moderately cheerful, exhibited logical, linear, and goal-directed through processes, showed signs of good judgment and good insight, and did not report symptoms consistent with a major depressive episode. [AR at 334, 345.]

The ALJ's later finding that the state agency phycologists were persuasive is consistent with other medical evidence of record showing that Plaintiff was only briefly treated for depression, and thereafter improved. [AR at 26.] There is ample medical evidence of record that not only contradicts Plaintiff's hearing testimony regarding her mental impairments, but also supports the ALJ's decision to omit further limitations in the RFC assessment. Thus, the Court is satisfied that the ALJ's

RFC assessment is supported by substantial evidence regarding the work limitations of Plaintiff's alleged mental impairments. In short, Plaintiff's challenge essentially constitutes an impermissible request for the Court to reweigh the evidence of record, but this challenge fails on appeal. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (explaining that "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations") (citations omitted).

Next, Plaintiff argues that the ALJ erred by not including further limitations in the RFC assessment to account for her MS and her hearing testimony that she experiences migraine headaches. However, the Commissioner cites relevant medical evidence of record showing no or infrequent headaches. [Docket No. 13 ("Commissioner's Brief"), at 27 (*citing* AR 338, 433, 472, 577, 757).] The Court agrees with the Commissioner that the ALJ is not required to consider unsubstantiated claims in formulating the RFC assessment.

Regarding the ALJ's assessment of Plaintiff's MS, the Court is satisfied that the ALJ provided a thoughtful and detailed rationale consistent with the medical evidence of record. [AR 2327.] The ALJ considered treatment records dating back to a consult with the neurology department at Penn Medicine from December 2018, noting "mostly normal objective exam findings," but "[t]he exception was mild weakness in right upper and lower extremities and abnormal reflexes." [*Id.* at 24.] Plaintiff continued to do well with her MS, reporting improvement at follow up appointments through February 2020, during which time period she also refused

medication because she was trying to conceive. [*Id.*] Ultimately, the ALJ concluded the following regarding Plaintiff's MS and his decision to include a sole limitation in the RFC assessment to light work:

> Overall, the undersigned finds the claimant's statements not fully consistent with the medical record. As discussed above, the claimant's multiple sclerosis was well controlled without medications and without frequent medical visits. Her clinical testing generally showed normal musculoskeletal, neurological, and mental functioning, aside from occasional deficits. Further, the claimant's own description of her activities of daily living are inconsistent with allegations of total disability. For instance, in June 2018, the claimant reported that she went on a trip to Hawaii (Exhibit 4F/66). In January 2019, the claimant reported an increase in physical activity to include meditation/yoga, physical exercise, and walking her dog each week (Exhibit 2F/27). At the hearing, the claimant reported that despite her limitations, she is able to take 20 minute walks several times a week, perform basic household chores such as sweeping, washing clothes, go to the grocery store, watch YouTube for up to an hour at a time, and go online to read the news for 40 minutes at a time (Hearing Testimony). Thus, the claimant engaged in activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.

[AR at 25.]

In light of the objective record overall, the Court is satisfied that the ALJ expressly considered Plaintiff's medically determinable mental and physical impairments in formulating the RFC assessment, and Plaintiff's attempts to reemphasize only certain parts of the record—including her own unsupported hearing testimony, arguing that they should have been afforded greater weight by the ALJ—is not persuasive. The Court finds that the RFC assessment is supported by substantial evidence, namely, the medical evidence of record upon which the ALJ based his decision.

> **B.     The ALJ Properly Considered Plaintiff's Subjective Complaints and Hearing Testimony**

Plaintiff's second argument is related to her first—that the ALJ erred by not giving more serious consideration to her subjective complaints. [Plaintiff's Brief at 13.] While Plaintiff is correct that subjective complaints may not be simply disregarded by the ALJ as irrelevant or unreliable, the Court is satisfied that, here, the ALJ made the requisite findings regarding Plaintiff's subjective complaints in light of the conflicting medical evidence of record.

As explained above, the ALJ made note of medical evidence showing "normal musculoskeletal and neurological functioning with respect to Plaintiff's MS, showing intact muscle strength, range of motion, sensation, reflexes, and gait, with only mildly decreased muscle strength in the right extremities on occasion." [AR at 26 (citations omitted).] The ALJ also considered that Plaintiff's MS was controlled even without medication and how her own descriptions of her daily activities were inconsistent with allegations of total disability. [AR at 25.] Again, the Court disagrees with Plaintiff's characterization of the record. The ALJ not only considered Plaintiff's subjective complaints regarding her MS and other alleged impairments, but also found them unpersuasive due to multiple sources of conflicting medical evidence. Plaintiff's second argument also fails as another impermissible attempt to have the Court reweigh the evidence of record.

### C. The ALJ's Treatment of Certain Medical Evidence of Record is Supported by Substantial Evidence

Plaintiff's third argument is that the ALJ failed to provide adequate reasons and properly consider the medical findings of Dr. Matthew Marsteller, DC, Plaintiff's chiropractor who opined that she could only sit for two hours in an eight-hour workday, and Dr. Joseph Berger, M.D., Plaintiff's treating neurologist who noted Plaintiff has "relapsing remitting multiple sclerosis" that has been under treatment. [Plaintiff's Brief at 20.] The Court finds that neither argument warrants serious consideration. As to Dr. Marsteller, the ALJ explained that his own treatment notes do not support his selections of significant limitation, "are fairly cut and paste," and are inconsistent with the record as a whole. [AR at 26.] The Commissioner is also correct that pursuant to the new controlling regulatory scheme, the ALJ is only required to consider two factors with respect to a medical opinion: supportability, which relates to the relevant objective medical evidence and supporting explanations provided by the medical source; and consistency, which relates to information provided by other sources. Here, the ALJ considered both factors, finding Dr. Marstellar's opinion neither inherently supported nor consistent with other medical evidence of record, and thus, not persuasive. [AR at 26.]

As to Dr. Berger, Plaintiff concedes in her supporting brief that his findings "are consistent with the record indicating the extent of the Plaintiff's limitations" regarding her MS. [Plaintiff's Brief at 20.] The ALJ is not required to expressly consider every medical opinion of record, especially when such findings may be

14

redundant or already covered by other medical findings discussed in the ALJ's decision. In any event, the Court finds that any error resulting from the ALJ's omission of Dr. Berger's opinion would be harmless here given Plaintiff's proffer that his opinion is consistent with the record. Thus, Plaintiff's third argument fails.

### D. Plaintiff's Constitutional Challenge Is Unrelated to Her Claim for Disability Benefits and She Is Unable to Show Compensable Harm

Plaintiff raises a constitutional challenge to the ALJ's decision, arguing that the recent decision by the United States Supreme Court in *Collins v. Yellen,* where the Court held that the removal provision of the Housing and Economic Recovery Act ("HERA") establishing the leadership structure of the Federal Housing Finance Agency ("FHFA") violated constitutional separation of powers because its sole director was removable by the President only for cause is applicable. 141 S. Ct. 1761, 1783–87 (2021). The parties do not dispute that the leadership structure of the Social Security Administration is modeled in this way regarding removal of the Commissioner only by the President for cause pursuant to the removal provision of the Social Security Act.

The Court agrees with the Commissioner that unlike appointments clause defects, where the presiding government official never enjoyed proper constitutional authority to occupy the office in the first instance, here with a constitutional challenge to only the President's removal authority, all agency action carried out beneath such agency head is not *per se* invalid. The Supreme Court explained the following:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed [d]irectors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Collins*, 141 S. Ct. at 1787 (emphasis in original). The *Collins* Court also noted, importantly, that "[a]lthough an unconstitutional provision is never really part of the body of governing law. . . it is still possible for an unconstitutional provision to inflict compensable harm." *Id.* at 178889.

Here, the Court agrees with the Commissioner and the ever-growing body of federal case law that such a showing of compensable harm in the context of an individual whose application for social security benefits was denied is unlikely since "there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021).[3]

---

[3]This Court agrees with the long list of District Court decisions cited by the Commissioner rejecting appeals predicated on the unconstitutionality of the Social Security Act's removal restriction for lack of compensable harm for similarly-situated plaintiffs as in the current case. *See Commissioner's Brief* at 14 (*citing Juliana Jolean A. v. Kijakazi*, No. 5:20-cv-1268, 2022 WL 595361, at *1-5 (N.D.N.Y. Feb. 28, 2022); *Jason V. v. Comm'r of Soc. Sec.*, No. C21-5527-SKV, 2022 WL 57503, at *5-7 (W.D. Wash. Feb. 25, 2022); *Colbert v. Comm'r of Soc. Sec.*, No. 5:20-CV-2234, 2022 WL 556738, at *2 (N.D. Ohio Feb. 24, 2022); *Kathy R. v. Kijakazi*, No. 2:21-cv-00095-JDL, 2022 WL 42916, at *3-5 (D. Me. Jan. 5, 2022), *report and recommendation adopted by* 2022 WL 558359 (D. Me. Feb. 24, 2022); *Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022); *Taffe v. Kijakazi*, No. 20-CV-1974-WVG, 2022 WL 542884, at *9-11 (S.D. Cal. Feb. 22, 2022); *Kowalski v. Kijakazi*, No. 3:20-CV-01783, 2022 WL 526094, at *9-12 (M.D. Pa. Feb. 22, 2022); *Twila D.B. v. Kijakazi*, No. 2:20-cv-6304-AFM, 2022 WL 425936, at

16

In *Collins*, the Supreme Court went on the provide examples of when such a direct link with a removal provision may cause harm to a party:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Collins*, 141 S. Ct. at 1789. In the context of a social security appeal decided by an ALJ, this link is severed. To put it differently, even if the removal statute of the Social Security Action violates separation of powers, the Court finds that Plaintiff has presented no evidence that this impacted the lawfulness of SSA's operations or that any SSA employee working on her claim did not have authority to do so. Further, the Court finds that Plaintiff is unable to establish that she suffered any

---

*2-4 (C.D. Cal. Feb. 10, 2022); *Pepper v. Kijakazi*, No. 6:20-cv-4159, 2022 WL 391577, at *2-3 (D.S.C. Feb. 9, 2022); *High v. Kijakazi*, No. 20-3528, 2022 WL 394750, at *5-6 (E.D. Pa. Feb. 9, 2022); *Rhonda W. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5931, 2022 WL 390802, at *6-8 (S.D. Ohio Feb. 9, 2022); *Vickery v. Comm'r of Soc. Sec.*, No 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Carla D. v. Kijakazi*, No. 2:20-cv-361-LRS, 2022 WL 264460, at *1-3 (E.D. Wash. Jan. 27, 2022); *Ramos v. Comm'r of Soc. Sec.*, No 1:20-cv-01606-EPG, 2022 WL 105108, at *2-4 (E.D. Cal. Jan. 11, 2022); *Nudelman v. Comm'r of Soc. Sec.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *10-13 (D. Ariz. Jan 11, 2022); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *3-5 (D.N.J. Jan. 7, 2022); *Hutchens v. Kijakazi*, No. 1:20CV1124, 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9, 2021), *report and recommendation adopted by* ECF No. 24 (M.D.N.C. Jan. 5, 2022); *Olimpiada v. Kijakazi*, No. 2:21-cv-00196-CLB, 2022 WL 19678, at *4-5 (D. Nev. Jan. 3, 2022); *Benavidez v. Kijakazi,* No. 20-990, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021); *Wybo v. Kijakazi,* No. 20- 518, 2021 WL 6052423, at *4 (W.D. Ky. Dec. 21, 2022); *Nathaniel H. v. Kijakazi*, No. 6:19-cv- 01280-AA, 2021 WL 5921377, at *4-6 (D. Or. Dec. 15, 2021); *Clark v. Kijakazi*, No. 20-cv-1363, 2021 WL 5905942, at *3-4 (E.D. Wis. Dec. 14, 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18-19 (D. Neb. Nov. 15, 2021).

compensable harm resulting from President Biden's decision to remove Andrew Saul from his position as Commissioner in July 2021, and for that matter, this Court does not see any linkage between that decision and Plaintiff's claim for social security benefits as decided by ALJ the Honorable Thomas Merrill. Unable to prevail on the merits of her claim for disability benefits, Plaintiff should not be permitted to assert constitutional challenges as a basis for remand of the ALJ's decision when the purported constitutional defect had no bearing on Plaintiff's case.

### E.   Plaintiff's Argument for Summary Judgment

The Court also disagrees with Plaintiff's final argument that she is entitled to a summary judgment award of disability benefits based on the record presently before it. As explained above, the Court is convinced that the ALJ's decision is supported by substantial evidence, and that the ALJ cited relevant medical evidence of record in discounting Plaintiff's testimony and other sources. The role of this Court is not to reweigh the evidence of record, and Plaintiff's current challenges constitute no more than an attempt to have the Court do precisely that.

## V.   **CONCLUSION**

The Court finds that Plaintiff's challenges are without merit, and in large part, constitute mischaracterizations of the ALJ's decision and the evidence of record. The alleged deficiencies in the ALJ's decision do not accurately depict the rationale he provided in support of his decision, which the Court finds is generally consistent with the medical evidence of record. Accordingly, the Court finds that the ALJ's decision

is supported by substantial evidence.

Further, the Court finds that Plaintiff is unable to make a showing of compensable harm resulting from the constitutional challenge she asserts regarding the removability of the Commissioner of Social Security by the President only for cause. For the foregoing reasons, the Court will affirm the decision of the ALJ.

An accompanying Order as of today's date shall issue.

Date: <u>September 30, 2022</u>                    <u>s/Renée Marie Bumb</u>
                                                    Renée Marie Bumb
                                                    U.S. District Judge